Good morning, everyone. The panel has before it a total of five cases. Two of them will be submitted later today, just on the briefs, without oral argument. Those cases are Appeal 1125 from 2009, In Re, Metki, and Appeal 1219 from 2009, In Re, Guess. On the argument list, we'll hear argument first in Lasanti v. OPM, second in States Roofing v. Navy, and finally in third position, Lucent Technology v. Gateway. So, Ms. Friedman, good morning. Welcome to the court. The floor is yours, so we'd like to hear your argument. This is in Appeal 3261 from 2008, Lasanti v. Office of Personnel Management. Thank you. May it please the court, my name is Linda Friedman, and I represent Anthony Lasanti, who is a 36-year former official federal court reporter from the Northern District of Illinois. Mr. Lasanti also seeks to represent other similarly situated federal court reporters. Do you agree that annuities being based on basic pay, that basic pay is defined in the statute? Do you agree that it's defined in the statute? Yes. And the statute lists, I think it's A through H, different forms of compensation that can count as basic pay. Do you agree that if the transcript-related income that these court reporters like your client receive is not on the list of A through H, that we then have to conclude it doesn't count as basic pay? No, Your Honor. You don't agree with that? No, we do not. So you think that list is not an exclusive list, it's just a partial list? The list is not an exclusive list, it does not list every single form of pay that a federal employee can receive, but the issue here is... No, no, no, that's not the question. The question is, what counts as basic pay? It looks to me like when you read the statute, basic pay includes everything listed in A through H, but the list stops at H. So if there's a form of compensation not on the list, it seems like you then have to conclude that such compensation does not meet the definition of basic pay, and therefore can't count toward annuity calculations. When you read the list, A through H doesn't include salary, it doesn't include the basic concept that a person works for a job, and that the job is described by law, and that that law carries compensation along with it. So the one item that's missing from that entire list is the notion that a person is compensated for the official duties of the job that they perform. But H not only lists certain things, it excludes certain things. In particular, pay given in addition to the base pay. Isn't the transcript pay given in addition to the base pay? No, we would argue that the transcript pay, as found in the United States of America versus the City of Pittsburgh case, which is at 757F2nd43, the Third Circuit Court of Appeals found that the fact that the reporters are paid by a third party does not change the character of their service. The collection of fees has been a traditional means of compensation for services rendered by public officials or employees in their official capacity. The Third Circuit further found that in preparing transcripts, the court reporter is an officer of the court and an employee of the United States. Was the court adjudicating what counts as basic pay in that case?  Well, that's my point. There's a difference between compensation and basic pay. The annuity is limited to basic pay. There can be other forms of compensation. And as Judge Lurie points out, that's exactly what H talks about. Certain forms of compensation do not count as basic pay. Under 5 CFR 550.103, the basic pay is explained to include the monies that a person receives for performing the basic functions of the person's job and as that's defined by law. When you look to 28 U.S.C. 753 B, D, and E, defined by law includes performing the transcript work in addition to the sitting in the courtroom and the salaried work. Were deductions made from this so-called transcript pay, deductions for the annuity? No. Our position is that the way in which... Isn't that pretty much a necessity, almost an earmark of determination whether it's basic pay? Well, the problem with that argument is that if, for example, the agency is doing it incorrectly and unlawfully, then everything flows from that ultimate first decision. Our position is that the agency here, the United States Office of the Courts, should not be paying these court reporters on a 1099. The IRS has agreed with that. But these deductions occur regularly. Shouldn't he have raised it right away? He did, Your Honor. He raised it before 1984. Federal court reporters were not considered to be employees of the court. There wasn't a ruling until, I think, 1986 in the cut-right decision that federal employees engage in regular tours of duties. Mr. Lasanti did begin to raise this and ultimately elevated it to the level of gathering a group of 10 federal court reporters from the Northern District of Illinois and filing a declaratory judgment action in federal court regarding the method of compensation. Because if the method of compensation were not correct and this should not have been 1099 income, then everything flows therefrom. If the monies had been paid and collected by the government in the way that they're collected when someone files a complaint, when someone pays for any other service, then the money would have been paid to the court reporter through a W-2 and pension benefits would have automatically been deducted from those dollars. The only reason that the pension benefits and the pension contributions are not deducted is because the money is diverted through a process that we believe is unlawful. The difficulty here is that there really isn't any place to go in order to challenge that. Mr. Lasanti has gone to the IRS and sought a refund, which was granted, based on law that applies to every company in this country, which is that you cannot have both an employee and an independent contractor working at the same time. When the government controls every aspect of the employment, such as the size of the paper, the font, when the transcripts have to be due, how much the reporter can charge, the IRS considers that person to be an employee. So this mechanism that they've set in place, which is that the public and even the federal government pays the court reporter directly, as the Third Circuit found, doesn't change the nature of the compensation. It simply means that the court reporter is collecting the funds for the federal government. Now, under the pension laws, if the federal government erred in failing to collect those pension monies, the federal government would be responsible for making those contributions and could seek from the employee reclaiming that money. Is it your position that you are entitled to prevail here because of the Third Circuit case? The Third Circuit case, amongst other reasons. What was the issue in that case? The issue in that case was whether or not taxes could be collected from the government and from the court reporters based on compensation, and whether this transcript income was part of the official duties that the court reporters were performing so that the tax could be imposed by Pittsburgh. In other words, it wasn't a pension annuity case. No, and one of the difficulties is actually getting someplace to hear the pension annuity case. We've been trying for 14 years, and we greatly appreciate the opportunity. I'm trying to figure out how the Third Circuit case helps you. If that's a tax case, not an annuity case, and it's not purporting to define what counts as basic pay, then I don't see how the Third Circuit decision helps you at all. It seems like it's not relevant. We start with the premise that basic pay means all monies that a person receives for performing the official duties that that person is assigned as fixed by law. Where do you get that? From 5 CFR 550.103, which is a federal regulation that both sides agree, states that what constitutes basic pay is what's fixed by law for the position in question. What, transcript pay fixed by law? Yes, sir. It's fixed by law in 28 U.S.C. But they're not paid by the employer, right? Not paid by the government employer. Right, and that's where the Third Circuit decision is helpful because it finds that the fact that the court reporters are collecting the monies for the federal government doesn't change the fact that that money is compensation. At least in a tax context. Well, it was actually the first step of the case was to determine that it was compensation before they could determine whether or not the tax could be imposed on a form of compensation. That seems obvious it's a form of compensation. It may not be so obvious that it fits the definition of basic pay versus other pay. Well, you get into this circular argument where if the first step is that it's erroneously cut off from all earnings and then everything is evaluated through that lens, then you do see these items as two separate pieces of compensation. But the court reporter's position is that they should not be paid under 1099. This money should be paid to them in conjunction with the regular monies that they earn. I'm finding it a little distracting to be talking about the tax aspects of this compensation. We're just trying to decide whether it counts as basic pay and therefore is part of the annuity calculation or not. How it's treated for tax purposes seems like a separate and distinct manner. Fair enough. We would cite, Your Honor, the federal regulation which states that basic pay is defined based on whether or not the pay is paid for the official duties of the position and whether it's fixed by law. All the forms of non-basic pay that are listed in H are for doing official duties, but they still don't count as part of basic pay because the statute in H says they don't count as part of basic pay. In the statute in H, they exempt certain items that are not included within basic pay, but they don't exempt the whole pay. But all of those items are for doing official duties. They're not for moonlighting on some separate enterprise. They're for doing the job that that government employee is required to do. But nevertheless, the Congress makes a distinction between those forms of pay that count as basic pay and other forms of pay for official duties that don't count as basic pay. It excludes bonuses and overtime pay, which are reasonably within the job. And the point would be that it excludes it. The concept would be that the basic presumption would be that everything for which a person is paid for is included and is part of the person's salary. And if this money had been paid as salary, we wouldn't be having this debate, but it's only because of the mechanism set up by the court system that the court reporter privately collects it, must report it back to the government, and then must receive a 1099 for the earnings that takes it out of salary. If the federal government paid this money consistent with the way every other corporation in the country is required to pay its employees, then we would not be having this debate. It would come to the federal court reporters as salary. The pension deductions would be made. We wouldn't be in basic pay. That's the difficulty with this case. You start with step one, which is a mischaracterization of the earnings. They are not independent contractor wages. I'm not worried about how the administrative office characterizes the transcript earnings or how the MSPB or the OPM characterizes it. What I'm concerned about is what Congress seems to have commanded in the statute when it says certain things count as basic pay and certain other kinds of pay don't count as basic pay. Whatever the opinion is of the AO or OPM or the MSPB, we have to follow what Congress has commanded. So I'm trying to get help from you. How do I get around what appears to be Congress's command that these kinds of collateral pay, I'll call it, not a technical term, don't count as basic pay because that's what the statute says. How do we get around that? Because it's not collateral pay. If you go back to 28 U.S.C. 753 B, D, and E, it is not collateral pay. Why isn't overtime collateral pay? And we know that that doesn't count toward pensions because it's not part of basic pay. In the particular instance with overtime, it's expressly exempted, but there are other forms of pay that are collateral that are included, hazardous pay. Because they're specifically listed. Right. But the transcript pay is not specifically listed. But it only exists as a separate component of pay because of the way in which the government is paying these employees. Sure. So we create this whole problem. If the federal government decided that they're going to start paying the Department of Justice lawyers a salary and then in addition they're going to require the Justice Department lawyers to bill each agency for a brief, and then put it on the 1099, we'd be having the same debate. But it doesn't change the notion that they've changed people's salary. We have a statute here that neither includes nor excludes the pay that we're talking about. The agency has interpreted the statute. Do we owe them deference? No. I think that raises a very interesting issue, which has been one that's been in debate in the Merit System Protection Board. A recent case, Frye v. Merit System Protection Board, which we did provide to the other side and also are submitting in a letter, raises the issue of when is the agency due, the employing agency due this deference. And the issue would be that in many of the cases that are cited in the OPM's brief, the agency is due deference because the individual retirement record, or the IRR, was filled out by the employee agency, and the dispute is over whether or not it was done correctly, whether or not there were errors in the IRR, whether the person's last day of work is reflected. I don't understand the OPM to have ruled that we're stuck with the IRR. It seemed to me they ruled on the merits that transcript pay doesn't count as basic pay and therefore cannot be part of the annuity calculation. The final MSPB ruling was that the MSPB lacked jurisdiction to consider that argument, and we do not believe you're stuck with the OPM's ruling on this because it's a matter of law. I'm not suggesting we're stuck with the OPM ruling. I'm trying to identify what the OPM ruling is, and it looks to me like it was a ruling on the merits of interpreting the statute defining basic pay rather than a ruling saying we at OPM can't even look at this because we're bound by the administrative office's IRR. That's correct with respect to the OPM. Yes, that's all I'm talking about. The MSPB then found that it couldn't look at anything other than the IRR and the MSPB. Isn't our question effectively was OPM correct when it interpreted the statute to exclude transcript pay from basic pay and therefore from annuities? Yes. Correct under the statute. If they were, then the result should be sustained, and if they weren't, then the result should be reversed and you would prevail. Yes, and both sides agreed that's a general question. In the context of an expert agency, OPM, interpreting a pay statute, wouldn't it be somewhat logical to say that courts like this court should pay some respect, maybe even defer to the presumed pay expertise of the OPM in interpreting Congress's pay statute that discriminates between basic pay and non-basic pay? No. Because? Our position would be it's a de novo. Because we're more expert than OPM in pay administration? I mean, what's the logic? The logic would be that this court has de novo authority to review that decision, and the issues that are involved in here are not issues relating to whether a person ended their employment on a particular day. They're legal issues relating to the statute 28 U.S.C. No question it's a legal issue. No question it's de novo review. The only question that Judge Lurie raised, and I'm trying to get a sense of what your real response is, is whether because of its extreme familiarity with pay administration and the pay statutes, courts ought not to be substantially respectful of the interpretation of the statute by OPM. And you say no, but I don't understand what your basis is for saying no. I would say in most circumstances that that's a reasonable position to take, that the OPM would have the expertise. But in this case, we're dealing with complicated legal issues concerning the treatment of this pay and whether or not a single act, which is the act of diverting the monies from salary, caused this entire pension dilemma. And there is no agency that's qualified as a matter of law to determine whether or not it was lawful to divert these monies from salary. And so the entire argument stands on the question of step one was to take the transcript income and to pull it out of salary. If it had not been pulled out of salary, we would not be here any different than if the Department of Justice starts requiring its lawyers to collect the briefs. You covered that before. All right, now we've given you some extra time, so let's hear from the government now and then we'll restore some of your rebuttal time. Thank you very much. Ms. Guilfoyle, good morning to you. Welcome back to the court. Maybe you should start with whether the construction by OPM of the statute separating basic pay from non-basic pay was correct and why. Right, OPM's position is that it does not fall within the definition of basic pay within Section 8331, which specifically includes among other enumerated items pay given in addition to the base pay of the position as fixed by law or regulation. OPM interpreted transcript income, which was paid based upon requests by third parties, in most cases paid to Mr. Lasanti directly by third parties, which varied based upon those requests, the length of court proceedings, the net amount of which varied depending on the cost of supplies and services procured by Mr. Lasanti personally is not the base pay of the position as fixed by law or regulation. Because it's variable? Not simply because it's variable. There's types of pay that might, and they're listed in items A through B, that vary based upon the needs of the employing agency. It varies based upon the needs of parties other than the employing agency. Ms. Kilfoyle, how do you rationalize with all of this the fact that what the court reporters do in the transcripts is their job, whereas the eight items that are explicitly listed are extra things that are by definition not included. There's nothing extra about producing transcripts. The only thing that's different is that the pay comes from the recipient of the transcript. But this is the job of the court reporter rather than some peripheral extra activity. And this really is the focus of this appeal. Is it not when the statute was changed to make the court reporters employees, it didn't also go back to this other list to correlate these duties, because now all of a sudden there is a full-time employee who gets a significant amount of compensation from someone other than the government. Right. That's the problem, isn't it, now when these people retire? That's lost. There's two issues that we need to address within that. It's not that court reporters became employees in 1984. Cut-Right v. United States establishes that they became full-time employees with regular tours of duty. The record at Joint Appendix page 88 shows that Mr. Lasanti was employed by the district court since 1970. What changed was that he was placed on the Leave Act, and that reduced his ability or eliminated his ability to engage in outside reporting activities other than his official reporting duties. It's not that he was not an employee prior to that time, and it's not that all court reporters were not subject to maximum rates established by the Judicial Conference for official reporting duties prior to that time, but it did eliminate his ability to engage in outside reporting when he was placed. Well, what's your response to Judge Newman's central point, which is that producing transcripts is the core function of a court reporter? It's not some separate duty. It's the core function, whether the recipient is the court that requested it or a private party. It's still the core function of the reporter. Again, that's not how basic pay is defined by the statute, though whether it's a core or non-core function, it's whether it's the base pay of the position as set by law or regulation. When you're performing overtime duties, you're performing the requirements of your job. When you receive a uniform allowance, you need that uniform to perform your work, but that's not basic pay under Section 8331. So it's not that everything that you do in the course of your job is necessarily basic pay as defined by the statute. Well, what about the other section that Ms. Friedman cited other than 8331? She cites, I believe, it's 550. It's a Code of Federal Regulations section addressing purposes of distinguishing basic pay from premium pay. We would say that that's not a regulation. What about the statute setting the salary of court reporters? Right. Again, the fact that they are not paid a wage for that work is something that was established by Congress, specifically in Section 28 U.S.C. 753F. It says that they collect these fees from the parties, not from their employer. To the extent that that's not a law that the court reporters like, that's a challenge to something better raised with Congress, not OPM, because that is precisely what the law provides as their system of pay. Well, I'm not sure I'm following you. 753, in your view, specifically makes their basic pay exclude transcript fees? No, no, no. To the extent that Mr. Lasanti alleges that the problem is that he is being paid by outside parties as opposed to through a wage, and that is improper, that is the mechanism that the statute sets forth. That's what Congress said his pay system is. It's not merely how the court administers it. It's specifically set forth in the statute. So to the extent that Mr. Lasanti contends that somehow the problem is that it's improper, that this is being compensated by an outside party as opposed to through a wage, that's really a challenge. He's not complaining about the source or the quantity of the money. He's just complaining about how it's counted with respect to annuities. Right. Our understanding was that he was actually claiming that it was improperly calculated with respect to annuities because it was paid by third parties and it should not have been paid by third parties, and that is required by the statute, the fact that it's paid by parties other than his employing agency. Ms. Kilfoyle, what are we to make of the statute that very carefully excludes certain kinds of compensation which are reasonably within the activities of a court reporter but doesn't include transcript pay, which is also reasonably within the responsibility of a court reporter? Why shouldn't we conclude that it's not excluded? Well, I'm sorry. I'm not sure I'm fully following. The statute excludes certain kinds of pay but doesn't exclude transcript pay. So why don't we conclude that that which is not excluded is not excluded. It is included. Well, again, you're correct that it doesn't specifically say that transcript income per se is not included, but it does say it doesn't include pay given in addition to the base pay of the position as fixed by law or regulation, and OPM has interpreted that to be this transcript income. So to the extent that there's any ambiguity and the statute and Congress hasn't spoken to this question, it's a question of whether OPM's interpretation was reasonable or in conflict with the statute, and that would be entitled to deference because they are under Section 8347 charged with administering the statute. What about the Third Circuit case? That's exclusively limited to taxation matters, which OPM doesn't have any authority over. It doesn't define basic pay for retirement purposes. Again, the court in that case seems to have concluded that it's some sort of personal services contract that Mr. Lasanti entered into in his capacity as an employee of the United States. Now, you're going to have to help me a little more with H. I don't understand your reading of H. H lists a bunch of pay that don't count as basic pay, and we all agree that transcript pay is not on that list of things excluded from basic pay. So then you must be taking the view that the list in H of things excluded from basic pay is an incomplete list, and some other things not listed there are also excluded from basic pay, right? No, our view is that although the words transcript income are not listed there, it specifically includes pay given in addition to the base pay of the position as fixed by law or regulation, and that part there has been interpreted by OPM not to include this type of transcript income. That would suggest that every form of pay that's not defined as the base pay elsewhere is excluded from base pay, even though it's not listed, just because it isn't included in the statute setting the pay of the position, which appears elsewhere than in 8331H. No, it would be to the extent that that term pay... Why isn't your answer yes? It's a generic exclusion. But it includes all pay that's not given in addition... Whether or not it's listed in the balance of H. Right, because... And that's because OPM says so? That's because the statute specifically lists what is not part of basic pay. Let's go back to the basic. The big difference here, however it's resolved, from all of the things which are listed and not listed, is that not whether or not the transcript pay is deemed included, but the transcript pay, everyone agrees, is in place of the basic pay. The basic pay is set at a certain significantly lower level, because it was always understood that transcript pay would go directly to the reporters. There were always controls and sealing and all else. But isn't the difference here that in this case for the court reporters, they receive pay from this other source for doing their standard activity, the activity for which they are employed by the government? Well, first, we would not agree that... I mean, it may be a logical assumption that the pay was necessarily set lower because they also earned this transcript pay. I don't think it's an assumption. I think the government agreed to that in its briefings. Well, I mean, there's nothing, no legislative history or anything in the record specifically supporting how... The question, I don't think that was challenged, that the reporters' pay from the feds was lower because it was well understood that they would receive transcript pay from the parties. I mean, that may be a logical assumption. We don't agree that their pay was... We certainly disputed in our brief that their pay was set artificially low, because as the record shows, at least... Are you saying that now? But you didn't dispute that in your arguments? We did, actually, in our brief. I can find the page that the pay was set artificially low because we say... Set artificially low? The total was estimated and calculated and undisputed to be the pay for the job. The only question is, where does some of the money come from? Well, his salary is set, I believe, at his last year of employment at $75,000 a year, and that was his salary from his employing agency, the Administrative Office of the Court, and then in addition to that, he earned a certain amount of transcript income. Can I take you back to H for the third attempt here? You seem to be saying, on the one hand, that by its plain terms, H bars transcript pay from being considered as basic pay. But on the other hand, you seem to be saying, well, the statute isn't clear, but it's been interpreted by OPM as barring the transcript pay, and we have to defer to OPM. Now, which is it? Does the statute win your case for you, or does OPM's expertise, or presumed expertise, provide the critical ingredient? Well, our position is that because the statute excludes pay, given in addition to the base pay of the position as fixed by law or regulation, it per se excludes this pay. However, to the extent that the court were to find that that statement in the statute was in some way ambiguous as to what that encompassed, at that point there would be a question of proper deference to OPM. But you don't think there is any ambiguity? No. So you're reading the critical language is, but does not include bonuses, allowances, overtime pay, military pay, pay given in addition to base pay. So you're reading it as if it said, but does not include bonuses, allowances, overtime pay, military pay, or any other kind of pay given in addition to the base pay. Correct. As set by law or regulation. Well, that part's not in dispute. All right. Well, I think we probably have a clear picture of your position. Anything further? No. Unless the court has any further questions, we respectfully request that you affirm the decision below. All right. Thank you. Ms. Friedman? Thank you. I'd like to turn back to H and focus on the part of H that says pay given in addition to the base pay of the position as fixed by law or regulation. And the court reporters do argue that the base pay of the position as fixed by law or regulation is set forth in 28 U.S.C. 753 D, E, and F, which includes both components of the pay, both the transcript income as well as the salary income. So the court reporters do take the position that the words as fixed by law or regulation include all monies that Congress has stated that they are to be paid for performing the basic function of their job. Because of 753? Is that right? 28 U.S.C. 753 D has two components to it. It expressly sets forth both the salary portion of the position as well as the right to collect the transcript income. And, of course, it was contemplated that what the government was doing was buying out from the private industry these court reporters, and to do so they would have to pay a market rate which included both the salary as well as the transcript income. Ms. Friedman, tell us again why the lack of deduction doesn't cost you your case. I think there are a number of ways to look at that. One is if you think about how the law works traditionally, cases and statutes like Title VII, often pension issues are resolved and there has been no deduction. These matters can be resolved after the proceedings. An order is given that a person was wrongfully denied a promotion. The order is that there be a promotion and someone compute what is due to the pension as well as what is due to the employee. That's because the employee hadn't received the pay. Here the employee did receive the pay, but there were no deductions. Mr. Lasanti has for two years not received any pension on those monies, and Mr. Lasanti also paid all the federal taxes. He was paid for the transcripts. He was paid for the transcripts, that's correct, and there was no deduction by the government. There is a section that's not part of the CSRS but is part of FERS which states that where the federal government fails to collect the money, and that's found at Title V, 841.505, and it delineates subparagraphs that explains how a refund is sought. First the pension is paid by the federal government for the failure to collect the monies, and then after that takes place the employee will be asked to provide recompense to the federal government for the failure to short, the shorting of the pension. But to deny Mr. Lasanti and his colleagues a pension that would be equivalent to the pension that every other federal employee in the country receives, based on the fact that the government failed to collect, seems to be putting the issue of the remedy before the issue of the liability. And so we would urge that the court find that the pension should have been awarded to all of these federal court reporters for precisely the reason, as Judge Newman, you questioned, is that these people provide valuable service to the court, and that service includes preparing these transcripts as well as the duties that they perform for which they get paid their salary. That is the total of their base pay, and pension contributions should have been allowed from those monies, not disallowed, and they should receive a pension consistent with the law that better reflects their earnings. You keep referring to his colleagues and all these other reporters. My understanding of the appeal before us is that it involves a single claimant, your client, Mr. Lasanti, and that it doesn't involve some large number or additional number of other former or present court reporters. There is an appeal of the denial of the class certification as well, your Honor. Well, is there any authority for the MSPB to engage in class action litigation? Yes. There is a process that's set forth when you make the request for class, and we complied with the request, and there was a ruling in this case denying the class. The basis for the denial of the class was the finding that not all class members had exhausted their administrative remedies, which seems it adds with Rule 23. For example, in Title VII, the whole purpose of the class. What's the authority for the MSPB to engage in class action? It's in the rules and consistent with the rules we submitted to the MSPB. The rest request to certify the appeal. What rules are you referring to? I don't have that in front of me, but I would be happy to provide that in a letter. Are you talking about rules of the MSPB or the Federal Rules of Civil Procedure? Well, the Federal Rules of Civil Procedure, Rule 23, govern, but in the process in the procedural rules of the MSPB. I can understand that the Federal Rules of Civil Procedure applied in the MSPB at all. Well, the issue with respect to the class certification is it's governed under Rule 23, and the questions are whether or not. Well, in a district court, certainly Rule 23 governs class actions and certifying classes, but what's the authority for saying that Rule 23 applies in the MSPB as opposed to the district court? I think that is just the way that it was treated by both the MSPB as well as the parties. You lost on the class action point for failure to exhaust administrative remedies, right, and the lack of applicability of Rule 23 to board proceedings. Right. I don't think anybody can deny that it would be helpful to have a class-wide ruling. It might be efficient, but that doesn't mean it's authorized by law. There actually was a provision that we were following. I apologize for not having it in front of me. I didn't know that it would be – I didn't anticipate it might be an issue, but it actually allowed for, at a certain place in the proceedings, a request to be made for a class certification, and there actually was a ruling that was issued by the MSPB denying on the grounds that each person didn't go through the process of challenging the pension, which seems at odds with the central purpose of having a class. All right. Well, we've given you both extra time. I think we have a pretty full exposition of the arguments, so we thank you both. We'll take the appeal under advisement. Thank you very much on behalf of Mr. Losanti and the court reporters.